This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42617 and
A-1-CA-42619 (consolidated)**

**IN THE MATTER OF MALACHI D., a Child,**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY
Lisa B. Riley and David E. Finger, District Court Judges**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** In these consolidated appeals in two different juvenile delinquency cases, Child challenges the district courts' denials of his motions to dismiss with prejudice, arguing that his adjudicatory hearings were untimely. *See* Rule 10-243(F)(2) NMRA (requiring that a case be dismissed with prejudice if the adjudicatory hearing "does not commence within the time limits provided in this rule, including any court-ordered extensions"). We dismiss Child's appeal in the first case, *In re Malachi D.*, No. D-503-JR-2024-00065 (5th Jud. Dist. Ct. Nov. 14, 2024), as moot and refer a problem to the Children's Court Rules Committee for its consideration. In Child's appeal in the second case, *In re Malachi D.*, No. D-503-JR-2025-00014 (5th Jud. Dist. Ct. Feb. 21, 2025), we reverse and remand for further proceedings consistent with this opinion. We discuss each appeal in turn.

**D-503-JR-2024-00065**

**{2}** Child's appeal in D-503-JR-2024-00065 is moot because we cannot provide Child with any actual relief. *See Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008. The remedy for an untimely adjudicatory hearing is dismissal of the case with prejudice, Rule 10-243(F)(2), but Child is already entitled to dismissal with prejudice under the terms of the consent decree entered by the district court. The consent decree placed Child on a six-month term of Child's probation, the State did not seek to revoke the decree, and the term of Child's probation expired before the completion of briefing on appeal. Because the consent decree provides that the original petition against Child is dismissed with prejudice upon successful completion of probation—and dismissal with prejudice is the best outcome Child could achieve in this appeal—no actual controversy exists, and the appeal is moot.

**{3}** Although we have discretion to reach the merits of a moot appeal that presents an issue that is capable of repetition but evading review or that presents an issue of substantial public interest, *see Gunaji*, 2001-NMSC-028, ¶¶ 9-10, we decline to do so in this particular case. Under the circumstances here, we believe it is more prudent to describe the difficult problem that the district court was tasked with solving and to refer that problem to the Children's Court Rules Committee so that it may consider whether to recommend a rule amendment to our Supreme Court.

**{4}** Even though Child was eventually detained in D-503-JR-2025-00014, the district court was required to apply Rule 10-243(B) in D-503-JR-2025-00065 because Child was never detained in that case. *See State v. Katrina G.*, 2007-NMCA-048, ¶ 20, 141 N.M. 501, 157 P.3d 66. Under Rule 10-243(B):

> [T]he adjudicatory hearing shall be commenced within one-hundred twenty (120) days from whichever of the following events occurs latest:
>
> > (1)     the date the petition is served on the child;
>
> > (2)     if an issue is raised concerning the child's competency to participate at the adjudicatory hearing, the date an order is entered finding the child is competent to participate at the adjudicatory hearing;
>
> > (3)     if the proceedings have been stayed on a finding of incompetency to participate in the adjudicatory hearing, the date an order is filed finding the child competent to participate in an adjudicatory hearing;
>
> > (4) if a mistrial is declared or a new adjudicatory hearing is ordered by the children's court, the date such order is filed;
>
> > (5)     in the event of an appeal, the date the mandate or order is filed in the children's court disposing of the appeal;

(6)     if the child fails to appear at any time set by the court, the date the child is taken into custody in this state after the failure to appear or the date an order is entered quashing the warrant for failure to appear. If the child is taken into custody in another state, the one-hundred twenty (120) days shall begin to run on the date the child is returned to this state;

(7)     the date the court allows the withdrawal of a plea or rejects a plea; or

(8)     if a notice of intent has been filed alleging the child is a "youthful offender," as that term is defined in the Children's Code, the return of an indictment or the filing of a bind over order that does not include a "youthful offender" offense.

In this case, none of the events listed in Subsections 2 through 8 occurred. The only possible event that could have started the clock was in Subsection 1: "the date the petition [was] served on [Child]." But the State did not file any proof of service on Child. *See* Rule 10-103(A) NMRA ("On the filing of the petition, the clerk shall issue a summons and deliver it to the petitioner for service."); Rule 10-103(C)(2) ("Service of process shall be made with reasonable diligence, and the original summons with proof of service shall be filed with the court in accordance with the provisions of Paragraph J of this rule."); Rule 10-103(J) (stating, in pertinent part, that "[t]he party obtaining service of process or that party's agent shall promptly file proof of service" but that "[f]ailure to make proof of service shall not affect the validity of service"); Rule 10-101(C)(3) NMRA (defining "process" to include "a summons and petition").[1] Nor did the State present any evidence that would have allowed the district court to find that the petition was served on Child at all, much less that it was served on any particular date. Under these circumstances, Rule 10-243(B) does not clearly state when the 120-day clock begins. The rule appears to have been drafted based on the reasonable presumption that a proof of service would be filed as required by Rule 10-103(J), or that some other evidence of the date of service would be available to district courts, allowing them to determine precisely when the 120-day time period begins and ends in each case. Whether a rule amendment is needed is a question that we believe should be considered by the Children's Court Rules Committee. *See State v. Asad P.*, 2025-NMCA-034, ¶ 20, 577 P.3d 223 (Yohalem, J., specially concurring) (requesting "urgent action" to address different concerns pertaining to Rule 10-243 and other rules), *cert. denied* (S-1-SC-40747, Feb. 7, 2025).

**{5}**     We dismiss Child's appeal in D-503-JR-2024-00065 as moot. We proceed to consider his appeal in D-503-JR-2025-00014, which is not moot because Child remains on supervised probation.

**D-503-JR-2025-00014**

---

[1]In Child's motion to dismiss, he did not argue that the State failed to serve process "with reasonable diligence." *See* Rule 10-103(C)(2).

**{6}** We begin with a summary of the factual background relevant to the two questions presented: (1) whether Child reserved his right to appeal the district court's ruling regarding the timeliness of his adjudicatory hearing; and (2) whether the district court erred when it determined that the thirty-day time limit had not expired. We then explain why our answers to both questions are yes.

**BACKGROUND**

**{7}** On February 20, 2025, the State arrested Child and placed him in detention. On February 21, the State filed a petition in the district court accusing Child of delinquent acts.

**{8}** The court scheduled a first appearance and detention hearing for February 24. During the hearing, Child's counsel stated that Child "waive[d] formal reading of the petition," and denied the charges against him. The State argued that Child should be detained, and Child argued for release to the custody of his grandmother. The court ordered that Child remain detained pending his adjudicatory hearing, which was set for March 25.

**{9}** On March 24, Child filed a motion to dismiss the case with prejudice pursuant to Rule 10-243(F)(2), arguing that the time for beginning his adjudicatory hearing had expired. Child relied on Rule 10-243(A), which states that an adjudicatory hearing for a detained child must begin within thirty days of "whichever of the following events occurs the latest." Only two of the listed triggering events are pertinent to the issue in this appeal: "the date the child is placed in detention" and "the date the petition is served on the child." Rule 10-243(A)(1)-(2). Child argued that the triggering event was his detention on February 20. If Child was correct, the time expired on March 24.[2]

**{10}** On March 25, the district court held a hearing on Child's motion and denied it. The court declined to treat the beginning of Child's detention as the triggering event because taking Child into custody prior to the petition being filed was not "the equivalent of serving the petition on [C]hild." The court noted that the date "when the petition was actually served" was unknown, and the court reasoned that "the most accurate substitute for service of the petition" was "the detention hearing and first appearance" because that was when Child "was advised of what his charges were and what his rights were" and "was fully apprised of what was in the petition." Using the date of the detention hearing and first appearance, February 24, as the triggering event, the district court concluded that the deadline for the adjudicatory hearing was March 26.

**{11}** After the court denied Child's motion, Child changed his plea, admitting to the offenses charged. The record does not include a written plea agreement. However, the hearing transcript reveals that the parties did have an agreement under which the State promised to recommend that the district court place Child on supervised probation for a period of up to two years. The district court accepted that recommendation, adjudicated

---

2Under Child's theory, because the thirtieth day fell on Saturday, March 22, the deadline for the adjudicatory hearing was Monday, March 24. *See* Rule 10-107(A)(1)(c) NMRA.

Child delinquent, and placed Child on supervised probation for a period of up to two years.

**{12}** During the change of plea hearing, neither the district court nor the parties mentioned Child either reserving his constitutional right to appeal or waiving that right. The district court advised Child of several constitutional rights he would waive by admitting that he committed the charged offenses, and Child indicated that he understood that he was giving up those rights, but Child's constitutional right to appeal was not mentioned. Similarly, the advice of rights form—which was signed by Child, defense counsel, and the district court judge—states that Child waived several specific constitutional rights, but not his right to appeal.

**{13}** The judgment and disposition—which was submitted and approved by the children's court attorney—states that "Child is advised by the [c]ourt of Child's right to appeal the judgment and order of this [c]ourt." The district court judge and counsel for Child signed the judgment and disposition. Child timely filed his notice of appeal.

## DISCUSSION

### I. Child Reserved His Right to Appeal

**{14}** The State contends that Child's plea was not a conditional one in which he reserved his right to appeal. Specifically, the State argues that Child failed to reserve his right to appeal because he did not express an intent to appeal when he changed his plea; the language regarding Child's right to appeal was inadvertently included in the judgment and disposition and therefore did not reflect any agreement between the parties; and the appeal language was general and therefore did not reserve the right to appeal the specific issue Child presents in this appeal. Child argues that the judgment and disposition—signed by the State, Child's attorney, and the court—explicitly allows him to appeal; the generality of that language does not matter because the only issue that was litigated was the timeliness of the adjudicatory hearing; and he did not waive his right to appeal. We agree with Child.

**{15}** When an accused person voluntarily pleads guilty, the general rule is that person waives their right to appeal their conviction on any basis other than jurisdiction. *See State v. Hodge*, 1994-NMSC-087, ¶ 14, 118 N.M. 410, 882 P.2d 1. An exception exists: the conditional plea. The technical requirements for conditional pleas are set out in Rule 10-226(B)(2) NMRA: "With the approval of the court and the consent of the state, a respondent child may enter a conditional admission, plea of no contest, or a consent decree in writing reserving the right, on appeal from the judgment, to review of the adverse determination of any specified pre-trial motion." However, "an appellate court should not require rigid adherence to these requirements." *Hodge*, 1994-NMSC-087, ¶ 21. Appellate courts may "pardon the informalities of a conditional plea so long as the record demonstrates that the spirit of [the conditional plea rule] has been fulfilled." *Id.* (internal quotation marks and citation omitted). In determining whether the spirit has been fulfilled, we take a "substance-over-form approach." *Id.*; *accord State v. Gage R.*,

2010-NMCA-104, ¶ 7, 149 N.M. 14, 243 P.3d 453. Under this approach, the "critical requirements" are that Child "express[ed] an intention to reserve a particular pretrial issue for appeal and that neither the prosecution nor the [district] court oppose[d] such a plea." *Hodge*, 1994-NMSC-087, ¶ 23; *accord id.* ¶ 21.

**{16}** We believe that those critical requirements were met here, despite the informality of the change-of-plea proceedings. The record establishes that the parties reached an agreement under which Child would admit to the charges and the State would recommend a disposition of up to two years of probation. *See* Rule 10-226(B)(1) (providing for plea agreements under which an admission is made by a child in exchange for the prosecution recommending "the imposition of a particular disposition"). But the required procedure for plea agreements was not followed here. All types of plea agreements—not just conditional plea agreements—must be in writing, but the record in this case includes no written agreement. *See* Rule 10-226(C) ("If a plea agreement has been reached by the parties which contemplates entry of an admission, a plea of no contest or a consent decree, it shall be reduced to writing substantially in the form approved by the Supreme Court."); Rule 10-226(K) ("A plea and disposition agreement or a conditional plea shall be submitted substantially in the form approved by the Supreme Court."); Rule 10-712 NMRA (plea agreement form); *see also State v. Jonathan B.*, 1998-NMSC-003, ¶ 11, 124 N.M. 620, 954 P.2d 52 (explaining that the requirement that plea agreements be in "writing in a form approved by" our Supreme Court serves several purposes, which include "ensur[ing] that prosecutorial promises are kept" and "that the plea agreement accurately reflects the bargain struck between the prosecutor and the defendant"). Without a written plea agreement in the record to indicate whether reserving the right to appeal was a term of the parties' agreement, we consider what the record does show.

**{17}** We believe that the judgment and disposition indicates that all of the critical requirements for a conditional plea are met. The judgment and disposition acknowledges Child's "right to appeal the judgment and order of this Court." The judgment and disposition was signed by the prosecutor, indicating that the State approved the contents of the document. The judgment and disposition was also signed by counsel for Child, indicating Child's intent to reserve his right to appeal as opposed to waiving it, and by the district court judge, indicating that the district court approved Child's reservation of the right to appeal.

**{18}** The State hypothesizes, tentatively, that the appeal language "appears to have been erroneously included" in the judgment and disposition. In support of this hypothesis, the State observes that there was no explicit reference to any particular issue being reserved during the change of plea hearing. That observation is accurate. But it does not establish that the appeal language ended up in the judgment and disposition "somewhat inexplicably," as the State asserts, rather than being included because Child intended to reserve and did, in fact, reserve his right to appeal. Intentional inclusion of the appeal language in the judgment and disposition is not inconsistent with what occurred during the change-of-plea proceedings. In the colloquy between the district court and Child, Child acknowledged that by admitting to the

charges, he was waiving several specific constitutional rights, but neither the district court nor Child mentioned Child waiving the right to appeal. Nor was a waiver of the right to appeal included in the advice of rights document that was signed by Child, his counsel, and the district court judge on the day of the change-of-plea hearing. The advice of rights mirrors the colloquy. Child acknowledged, and the district court approved, Child's waiver of several specific rights, but not the right to appeal. The absence of any reference to a waiver of the right to appeal during the change of plea hearing and in the advice of rights document is consistent with the statement in the judgment and disposition that Child reserved his right to appeal. Considering the entire record, we are not persuaded that the appeal language was included by mistake.

**{19}**     We instead conclude that the signatures of the parties' lawyers and the district court judge on the judgment and disposition represent exactly what they purport to represent: knowing and intentional approval of the document's contents, including Child's retention of his right to appeal. Although the appeal language does not specifically identify the issue to be raised on appeal, we believe the issue is obvious because the only issue that was litigated in the district court was whether the adjudicatory hearing was untimely. *See Gage R.*, 2010-NMCA-104, ¶ 7 (concluding that the child reserved his right to appeal despite his failure to specify the issue to be appealed because it was "obvious" that the child intended to appeal the "one central question" presented by his motion to suppress).

**{20}**     For these reasons, we hold that Child reserved his right to appeal the district court's ruling regarding the timeliness of his adjudicatory hearing. We therefore decline to dismiss Child's appeal.

## II.     An Adjudicatory Hearing Was Not Held Within Thirty Days

**{21}**     Child argues that the time period for commencing his adjudicatory hearing expired before that hearing was held and that the district court erred by concluding that his hearing was timely. Reviewing the district court's interpretation of Rule 10-243(A) de novo, *see State v. Stephen F.*, 2006-NMSC-030, ¶ 7, 140 N.M. 24, 139 P.3d 184, we agree.

**{22}**     When, as in this case, a child is detained pending an adjudicatory hearing, Rule 10-243(A)'s thirty-day time limit for commencing the adjudicatory hearing "protects the child's liberty interests." *See State v. Anthony M.*, 1998-NMCA-065, ¶ 9, 125 N.M. 149, 958 P.2d 107. Extensions of time are only permitted "[f]or good cause shown." *See* Rule 10-243(D); *see also* Rule 10-243(E) (describing the procedure for extension motions). In this case the State did not move for an extension so the only question was when the thirty-day period started. That question is addressed by Rule 10-243(A), which states that the event that starts the clock is "whichever of [nine listed] events occurs latest." Because it is obvious that seven of the nine triggering events did not occur in Child's case, the only two events at issue here are "the date the child is placed in detention," Rule 10-243(A)(2), and "the date the petition is served on the child," Rule 10-243(A)(1). The date of Child's placement in detention was February 20, 2025, which means that

the clock started on that date, unless the petition was served on Child after that date. *See id.*

**{23}** Applying the plain meaning of the unambiguous words used in Rule 10-243(A), *see N.M. Uninsured Emp.'s Fund v. Gallegos*, 2017-NMCA-044, ¶ 15, 395 P.3d 533, we conclude that the record does not establish that the petition was ever "served on" Child, and that Rule 10-243(A) does not contemplate substituting the date of Child's first appearance in court for the date of service of the petition. Serving a petition on a child means "delivering a copy" of the "petition to the respondent child."[3] *See* Rule 10-103(G)(1). A petition can be delivered in various ways, including personal delivery and delivery by mail, *see* Rule 10-103(E)-(I), but in this case there is no evidence that the petition was delivered in any of those ways.[4] Although the State was required to file proof of service, *see* Rule 10-103(C)(2), (J), the State did not do so. Nor did the State present any other form of evidence that the petition was actually served, much less what the date of service was. Indeed, the district court recognized that it had no basis for determining "when the Child was actually served." Without any evidence that the petition was served, the only applicable triggering event in Rule 10-243(A) was Child's detention on February 20.

**{24}** We do not agree that the applicable rules permit the use of Child's detention hearing and first appearance as a triggering event. The language of Rule 10-243(A) is clear, and its exhaustive list of several specific events that could start the clock does not include a first appearance or detention hearing. The district court reasoned that "the most accurate substitute for service of the petition" was "the detention hearing and first appearance" on February 24 because the court believed that was when Child "was advised of what his charges were" and "was fully apprised of what was in the petition."[5] But oral notice is not service of a petition on a child, as service is defined by the Children's Court Rules, and Rule 10-243(A) does not state or otherwise suggest that oral notice may be used as a triggering event. Had our Supreme Court intended to allow the clock to start on the date of a child's first appearance or on some other date when a child receives oral notice of the charges, we believe our Supreme Court would have added those events to the list of events in Rule 10-243(A), but our Supreme Court

---

[3]In addition to requiring service of the petition on the child, Rule 10-103(G)(1) requires service of the petition on "a custodial parent, custodian, guardian, or conservator of the minor." This additional service requirement is not at issue here.

[4]Child's motion to dismiss did not include an argument that the State violated Rule 10-103(C)(2) by failing to serve Child "with reasonable diligence."

[5]The Children's Court Rule governing first appearances, Rule 10-224 NMRA, states that "the court shall inform the respondent child of," among other things, "the offense[s] charged." During Child's first appearance, the district court did not inform Child of the offenses charged and instead allowed Child's lawyer to waive a reading of the charging document. Rule 10-224 does not explicitly allow for such waivers, unlike the Rule of Criminal Procedure that governs arraignments in district courts. *See* Rule 5-303(B) NMRA ("The district attorney shall deliver to the defendant a copy of the indictment or information and shall then read the complaint, indictment or information to the defendant unless the defendant waives such reading."). For purposes of this appeal, we assume, without deciding, that the waiver by Child's counsel was permissible and that the waiver amounted to oral notice of the charges.

chose not to do so. And among all of the triggering events it chose to list, the only one established by the record is Child's placement in detention on February 20.

**{25}** Although we need not look beyond the text of Rule 10-243(A) because we believe that its meaning is clear, we do so anyhow to ensure that our understanding of the text is consistent with the rule's purpose. *See State v. Vest*, 2021-NMSC-020, ¶ 20, 488 P.3d 626. We believe that adhering to the plain meaning of the text achieves the important purpose of the thirty-day time limit: "protect[ing] the child's liberty interests." *Anthony M.*, 1998-NMCA-065, ¶ 9. In our view, that purpose would be jeopardized by allowing events that are not identified in the rule to start the clock, effectively extending the time for holding the adjudicatory hearing for a child being held in detention without any showing of "good cause." Rule 10-243(D). When a child is detained pending an adjudicatory hearing, as Child was in this case, the child's liberty interests are best protected by following Rule 10-243(A) as written, together with the rules that require the state to serve the petition on the child with reasonable diligence, to file proof of service, and, once the deadline for the adjudicatory hearing is established, to obtain extensions only for good cause shown. In short, we decline to add the words "initial appearance" or "oral notice of the charges" to the words our Supreme Court chose to include in Rule 10-243(A) because adding those words is not "necessary to conform to the obvious intent [of the rule], or to prevent absurdity." *State v. Elam*, 1989-NMCA-006, ¶ 16, 108 N.M. 268, 771 P.2d 597.

**{26}** For these reasons, we hold that, absent any evidence of when Child was served with the petition, the thirty-day clock started when Child was placed in detention on February 20. *See* Rule 10-243(A). The deadline was therefore Monday, March 24, because the thirtieth day fell on Saturday, March 22. *See* Rule 10-107(A)(1)(c) NMRA. Because there was no extension of time for good cause, the time expired before an adjudicatory hearing was held.

**CONCLUSION**

**{27}** We dismiss as moot Child's appeal in D-503-JR-2024-00065.

**{28}** In Child's appeal in D-503-JR-2025-00014, we reverse the district court's application of Rule 10-243(A) and remand this case so that Child may—if he so chooses—withdraw his plea admitting the charges against him. *See* Rule 10-226(B)(2); *Hodge*, 1994-NMSC-087, ¶ 20.

**{29}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KATHERINE A. WRAY, Judge**